June 17, 2021

**Supreme Court**

No. 2019-374-Appeal.
(PC 17-974)

Richard Machado et al.            :

v.                                :

Narragansett Bay Insurance        :
   Company.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Richard Machado et al.          :

v.          :

Narragansett Bay Insurance          :
Company.

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The plaintiffs, Richard Machado and Susan Machado, own a home in Smithfield, Rhode Island, which at the relevant times was insured by the defendant, Narragansett Bay Insurance Company (NBIC). In March of 2015, the Machados notified NBIC of water damage to their home that stemmed from the accumulation of snow on their roof.  The Machados promptly submitted a claim to NBIC, detailing the damage to their home.  Shortly thereafter, they received from NBIC a check for $14,549.78.  The instant case arises out of a dispute as to whether the Machados, pursuant to their homeowners insurance policy with NBIC, were entitled to receive a subsequent appraisal of the damage to their property as well as additional compensation for damage incurred.  The only

- 1 -

issue before us is whether the Superior Court acted properly in granting summary judgment to the defendant insurer.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After examining the written and oral submissions of the parties, we are of the opinion that cause has not been shown and that the appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

The following facts are gleaned from the exhibits attached to NBIC's memorandum in support of its motion for summary judgment and from the Machados' memorandum in opposition to NBIC's dispositive motion.

NBIC and the Machados were parties to a homeowners insurance policy for their residence located on Farnum Pike in Smithfield. That policy became effective on January 5, 2015 and extended until January 5, 2016. On March 6, 2015, the Machados notified NBIC in writing of a loss caused by water damage in the wake of a series of late Winter storms, stating: "Storage space was built on side of home and is damaged from water. Water damage in hallway throughout home. Roof has water leak." Very shortly thereafter, Ryan Vickery, a General Adjuster

for the Claim Consultant Group, LLC (CCG), performed an inspection of the Machados' residence on behalf of NBIC. After completing the inspection, Mr. Vickery informed the Machados, in a letter dated March 14, 2015, that the total estimated replacement cost for their claim was $15,049.78. In that letter, he also advised the Machados of the following:

> "[I]n accordance with the Terms & Conditions of your policy's replacement cost provisions, your building and/or personal property claim has been settled on an actual cash value basis, pending repair or replacement of the damaged building and/or personal property. In accordance with the aforementioned replacement cost Loss Settlement provisions of your policy, *you have 180 days from the date of loss to repair or replace the damaged building and/or personal property and to make a Replacement Cost claim under this policy.*" (Emphasis added.)

Subsequently, on March 19, 2015, NBIC mailed the Machados a check for $14,549.78, which represented the total estimated replacement cost less the $500 deductible. It is undisputed that the Machados deposited that check on March 24, 2015.[1]

---

[1] There is evidence in the record that, at some point in September of 2016, there was contact between NBIC and the Machados with respect to the damage to their property. Even though the record is silent as to the substance of such contact, it can be inferred that it dealt with the estimate that the Machados received from a public appraiser who worked for A-Plus Construction Company, whom Mr. Machado had hired to conduct an appraisal of the damages. That estimate, which was communicated on or about August 9, 2016, indicated that the replacement cost relative to the water damage to the property would be over $130,000.

On December 1, 2016, more than twenty months after having deposited the check from NBIC, Mr. Machado wrote a letter to NBIC's Claims Department requesting an appraisal for the March 2015 loss pursuant to the policy's terms and conditions.[2]  On December 30, 2016, NBIC responded by letter to Mr. Machado's letter of December 1 and rejected the request for an appraisal.  NBIC's letter stated in pertinent part as follows:

> "You cashed this check and never disputed the scope of the payment.  No further communication was received from you following issuance of this payment until September 2016.  Because more than one year lapsed between issuance of payment and any communication from you regarding your position as to this resolution of your claim, this claim was closed and your December 1, 2016 request for appraisal is untimely.  Accordingly, we must reject your request."

On March 1, 2017, the Machados filed a complaint against NBIC in the Providence County Superior Court, alleging that NBIC had failed to abide by the terms of the insurance policy and seeking damages for the water damage to their

---

[2]      The appraisal provision of the policy states in pertinent part: "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the 'residence premises' is located.  The appraisers will separately set the amount of loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of loss."

property.  In the complaint, the Machados stated that they had a valid insurance policy with NBIC, which was in effect at the time of the damage, and that they had "timely filed a claim with [NBIC] and satisfied their requirements in submitting a claim for coverage for the loss in question."  The Machados further alleged that NBIC's denial of the claim constituted a breach of their insurance contract and caused them to suffer damages.  On March 7, 2017, NBIC answered the Machados' complaint and asserted several affirmative defenses; discovery thereafter ensued.

On July 12, 2018, the deposition of Mr. Machado was taken, during which he stated that, after cashing the check from NBIC, he "did a little more investigation with different people that [he knew] that are in the business * * *."  He added that, as a result of that investigation, he learned that there was "a lot more damage" to his home.  Mr. Machado testified that an independent appraiser, whom he hired to perform an inspection of the damage, told him that there was "over a hundred thousand dollars worth of damage" to the home.[3]  Mr. Machado further stated in his deposition that, although he did not know how much it would cost to repair his home, he did know that "it's going to be a lot more than $15,000."

---

[3]     In his deposition, Mr. Machado stated that he had hired a public appraiser who worked for A-Plus Construction Company; he added that he had no prior connection to the appraiser or the company.

On January 10, 2019, NBIC filed a motion for summary judgment, contending that: (1) "[t]he Machados do not have a right to an appraisal because they did not disagree with NBIC's estimate of the amount of the loss;" (2) "[t]he Machados have waived any right they may have had to an appraisal;" and (3) "the Machados' claim should be dismissed as untimely." On June 28, 2019, the trial justice granted NBIC's motion for summary judgment, ruling that "plaintiffs' failure to make a timely demand for an appraisal was unreasonable and has materially prejudiced the defendant." Judgment entered in favor of NBIC on July 10, 2019, and the Machados timely filed a notice of appeal.

## II

### Standard of Review

This Court reviews a hearing justice's grant of summary judgment *de novo*. *Credit Union Central Falls v. Groff*, 966 A.2d 1262, 1267 (R.I. 2009). Should a hearing justice grant a party's motion for summary judgment, such a decision will be upheld only if, "after reviewing the admissible evidence in the light most favorable to the nonmoving party, [the Court] conclude[s] that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 638 (R.I. 2005) (internal quotation marks omitted). Moreover, the party "opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a

disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (internal quotation marks omitted).

## III

## Analysis

The Machados contend on appeal that the trial justice erred by granting NBIC's motion for summary judgment. More specifically, they aver that, because the parties primarily dispute the "extent of the loss," NBIC must "comply with [their] request for appraisal." In support of this argument, the Machados rely primarily on *Hahn v. Allstate Insurance Co.*, 15 A.3d 1026 (R.I. 2011).[4] The Machados further argue that, because the "issue of waiver and resulting prejudice from the delay is an issue of fact to be decided by the finder of fact," said issue may not be appropriately decided pursuant to a motion for summary judgment. NBIC, on the other hand, contends that "[t]he Superior Court was correct in concluding that the Machados waived any right they may have had to an appraisal

---

[4] In *Hahn v. Allstate Insurance Co.*, 15 A.3d 1026 (R.I. 2011), the defendant insurance company refused to submit to an appraisal, in spite of the provision in the plaintiff's insurance policy that "afford[ed] either party the right to have disputes over the amount of loss resolved through an appraisal process." *Hahn*, 15 A.3d at 1027. In that case, we held that "unless the insurer denies coverage for the claimed loss and if the dispute is limited to the amount or extent of the loss, the parties are required to submit to the appraisal process." *Id.* at 1030.

It should be noted that *Hahn* recognizes that the purpose of the appraisal clause is to ensure speedy and efficient resolution of claims. *Id.*

because their delay in requesting an appraisal was unreasonable and materially prejudiced NBIC." We find ourselves in agreement with the Superior Court's ruling.

We have held that, when "interpreting the contested terms of [an] insurance policy, we are bound by the rules established for the construction of contracts generally." *Koziol v. Peerless Insurance Co.*, 41 A.3d 647, 650 (R.I. 2012) (internal quotation marks omitted). We have further stated: "*Generally*, whether a party materially breached his or her contractual duties is a question of fact." *Parker v. Byrne*, 996 A.2d 627, 632 (R.I. 2010) (emphasis added). Significantly, however, we also expressly stated in that same opinion: "If the issue of material breach * * * admits of only one reasonable answer, then the court should intervene and resolve the matter as a question of law." *Id.* (internal quotation marks omitted). It is our view that, because the particular sequence of events in the instant case causes there to be "only one reasonable answer," the issue may be resolved as a matter of law. *Id.* (internal quotation marks omitted).

In spite of the fact that the Machados were sent the March 14, 2015 letter directing them to notify NBIC within "180 days from the date of loss" of any intent to seek additional damages, they waited over 600 days before attempting to invoke

- 8 -

the appraisal clause of their insurance policy.[5] It is further noteworthy that the Machados had also received and deposited a check for a substantial sum from NBIC approximately two weeks after they submitted their claim. The Machados' justification for their failure to more expeditiously request an appraisal was that, when NBIC provided them with the check in March of 2015, they did not sign a release and NBIC did not indicate whether the payment was a full and final settlement under the insurance policy. They added that "they were unsure as to whether [the estimate] was accurate and thought there was more damage to their home." Nevertheless, the plain, blunt fact is that they chose to wait between one and two years to communicate their concerns to NBIC.

It is undisputed that NBIC had certain obligations under the insurance policy, given that each party to such a policy is "bound to proceed reasonably and in good faith toward the completion of the contemplated performance." *Empire Acquisition Group, LLC v. Atlantic Mortgage Co., Inc.*, 35 A.3d 878, 884 (R.I. 2012). However, it is also the case that a "party's material breach of contract justifies the nonbreaching party's subsequent nonperformance of its contractual obligations." *Women's Development Corp. v. City of Central Falls*, 764 A.2d 151, 158 (R.I. 2001). The Machados' conduct in waiting almost two years before

---

[5] The letter dated March 14, 2015 stated, in relevant part: "In accordance with the aforementioned replacement cost Loss Settlement provisions of your policy, you have 180 days from the date of loss to repair or replace the damaged building and/or personal property and to make a Replacement Cost claim under this policy."

seeking to invoke the appraisal clause of their homeowners insurance policy cannot be described as "proceed[ing] reasonably and in good faith toward the completion of the contemplated performance." *Empire Acquisition Group, LLC*, 35 A.3d at 884. Accordingly, NBIC was thereby relieved of its responsibilities under the insurance policy. *Women's Development Corp.*, 764 A.2d at 158.

Since it is clear to us that the facts as they exist in this case "admit[] of only one reasonable answer," *Parker*, 996 A.2d at 632—namely, that the Machados' delay in requesting the appraisal was unreasonable, thereby relieving NBIC of its contractual duties—we are of the opinion that this case was properly decided as a matter of law. Accordingly, we are of the opinion that the trial justice certainly did not err in granting NBIC's motion for summary judgment.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Richard Machado et al. v. Narragansett Bay Insurance Company. |
| **Case Number** | No. 2019-374-Appeal.<br>(PC 17-974) |
| **Date Opinion Filed** | June 17, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa E. Darigan |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Edward R. McCormick, III, Esq. |
| | For Defendant:<br><br>Andrew M. Lentz, Esq.<br>Stephen P. Harten, Esq.<br>Stephanie F. Friedel, Esq. |